FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JAN 04 2019

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Zachariah Stanley Joe, year of birth 1991 | ) ) ) ) ) | Case No.  PMJ 30 |
| Defendant(s) | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 3, 2019__ in the county of __San Juan__ in the _____ District of __New Mexico__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 §1153 | Offenses committed within Indian country |
| Title 18 §1111 | Murder |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's Signature

Lance Roundy, Special Agent
Printed name and title

**Electronically submitted and telephonically sworn before me.**

Date:  6:14 PM, Jan 4, 2019

_____
City and state:  Albuquerque NM

Karen B. Molzen, United States Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Lance Roundy, being duly sworn, state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. This affidavit is made in support of a Criminal Complaint and an Arrest Warrant for Zachariah Stanley JOE, (referred to herein as "JOE"), year of birth 1991.

2. I am a Special Agent with the United States Department of Justice, Federal Bureau of Investigation (FBI) and have been employed as such since 2008. I am currently assigned to the Albuquerque Division of the FBI, Farmington Resident Agency. I have primary investigative responsibility for investigating crimes that occur in Indian Country, including violent crimes such as homicide, robbery, arson, aggravated assault, and sexual assault. As a Federal Agent, I am authorized to investigate violations of the laws of the United States and have authority to execute arrest and search warrants issued under the authority of the United States.

3. This affidavit is based upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties. Throughout this affidavit, reference will be made to law enforcement officers. Law enforcement officers are those federal, state, and local law enforcement officers who have directly participated in this investigation. This affidavit is also based upon information gained from interviews with cooperating citizen witnesses, whose reliability is established separately herein.

4. Based on my training, experience, and the facts set forth in this affidavit, I believe there is probable cause that violations of United States Code Title 18 §1111 and §1153 – Murder committed within Indian country, were committed by JOE.

1

5.      Because this affidavit is submitted for the limited purpose of securing authorization for a Criminal Complaint and Arrest Warrant, I have not included each and every fact known to me concerning this investigation. This affidavit is intended to show that there is sufficient probable cause for the requested warrant.

## PROBABLE CAUSE

6.      On January 3, 2019, the Farmington Resident Agency of the Federal Bureau of Investigation was notified by the Navajo Department of Public Safety, Criminal Investigations, of an altercation that occurred earlier that evening in Shiprock, New Mexico, within the exterior boundaries of the Navajo Indian Reservation. During the altercation, an individual with the initials of B.M.M., and a year of birth of 1986 (referred to herein as "John Doe"), received multiple stab wounds and was subsequently pronounced dead at the Northern Navajo Medical Center. Initial information revealed that John Doe was with JOE and another individual with initials of B.M. and a year of birth of 1982, at a home just west of the Thatsaburger restaurant off of Highway 491 in Shiprock prior to the assault.

7.      The Office of the Medical Investigator (OMI) was notified and an investigator conducted a visual assessment of John Doe's body, counting approximately ten puncture and/or laceration wounds. An autopsy was scheduled for January 5, 2019.

8.      Interviews were conducted with an individual having the initials of D.T. and a year of birth of 1962. During the interviews, D.T. stated that in the evening hours of January 3, 2019, he arrived at his home located west of Thatsaburger restaurant with another individual with initials of V.B. and a year of birth of 1961, and observed JOE kicking John Doe while John Doe was on the ground outside of the residence. D.T. exited his vehicle and approached JOE pushing him back from John Doe. D.T. recognized John Doe to be unresponsive and subsequently heard JOE state

something to the effect that John Doe was stabbed. D.T. then kept JOE at a distance from John Doe to prevent further assault and attempted to assist John Doe to his feet while realizing he was bleeding underneath his multiple layers of clothing. D.T., along with other individuals, put John Doe in a vehicle and transported him to the hospital. D.T., who resides at the residence, subsequently recognized a kitchen knife missing from the kitchen drawer.

9. An interview was conducted with V.B. on or about January 3, 2019. During the interview, V.B. stated that she arrived at her place of residence earlier that evening with D.T. and observed JOE kicking John Doe while John Doe was on the ground outside of the home. V.B. then exited the vehicle and helped separate JOE from John Doe and eventually assisted in putting John Doe inside a vehicle taking him to the nearby hospital for treatment. V.B. did not notice anything in JOE's hands as she was attempting to put John Doe in the vehicle.

10. On or about the early morning hours of January 4, 2019, a search was conducted on the residence based on written consent from the home owners. The search revealed a red substance consistent with blood inside the residence near the door and surrounding areas as well as outside on the ground near other vehicles. Additionally, the investigating Agents observed a large wood burning stove near the door that appeared to be knocked off the stabilizing blocks and a kitchen chair that was knocked over. The scene was similar in appearance to the aftermath of a fight or an altercation. No weapons or other objects were located and seized during the search.

11. On January 4, 2019, B.M. was interviewed at the Criminal Investigations Office in Shiprock. During the interview, B.M. said that on January 3, 2019, he was drinking alcohol with John Doe at his place of residence west of Thatsaburger restaurant in Shiprock. During the early evening hours John Doe communicated via text message with JOE indicating that he (JOE) just left his place of employment at the Burger King restaurant a short distance away and wanted to

come over to the residence. JOE subsequently arrived at the residence intoxicated and extremely upset about being fired from his job earlier that day. JOE continued his tirade about losing his job throughout the evening and at one point, JOE violently struck John Doe in the face with the back of his hand, sending John Doe back towards the wood burning stove. As John Doe fell to the ground, he struck the wood burning stove knocking it off the stabilizing blocks. Once on the ground, JOE quickly approached John Doe in an effort to continue the assault; however, B.M. intervened and punched JOE several times in the head with his fists, causing a laceration to JOE's head. B.M. was able to wrestle JOE to the ground and get him subdued long enough for John Doe and B.M. to retreat to the exterior of the residence, while JOE remained inside locking the door. B.M. said that while he wrestled with JOE on the ground, JOE was bleeding from the laceration on his head. B.M. described to the investigating Agents the location where he held JOE while he was bleeding which coincided with the locations where significant red substance consistent with blood was found inside the residence during the search.

12. While locked outside the residence, B.M. reported hearing JOE searching through the kitchen drawers and cabinets in a violent manner. B.M. then became upset feeling that his home was being invaded, and subsequently ran to the known residence of JOE and broke a window. B.M. then returned to his residence approximately five minutes later and found John Doe on the ground just outside of the door bleeding. B.M. observed JOE standing over John Doe. B.M. reported observing D.T. and V.B. subsequently arrive and assist with getting John Doe to a vehicle. B.M. stated that he was arrested a short time later by the Navajo Police Department for breaking the window on JOE's house and was released from the Shiprock Detention Center. B.M. stated that the only individuals at the residence with him during the altercation were JOE and John Doe,

and he further said that he saw no one running from the residence upon return from breaking the window at JOE's residence.

## JURISDICTIONAL STATEMENT

13. The offense detailed in this affidavit was committed within the exterior boundaries of the Navajo Indian Reservation.

14. John Doe and JOE are enrolled members of the Navajo Tribe.

## CONCLUSION

15. Based on my training, experience, and the facts as set forth in this affidavit, there is probable cause to believe that violations of United States Code Title 18 §1111 and §1153 – Murder committed within Indian country, were committed by JOE, by assaulting and killing John Doe.

Assistant United States Attorney Kyle Nayback reviewed and approved this affidavit and Criminal Complaint.

Lance Roundy
Special Agent
Federal Bureau of Investigation

Electronically submitted and telephonically sworn before me

United States Magistrate Judge