IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

    vs.                          No. CR 19-3746 JB

ZACHARIAH STANLEY JOE,

      Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW the Defendant, Zachariah Joe, by and through his counsel of record, Melissa A. Morris, and pursuant to 18 U.S.C. § 3553, and Rule 11(c)(1)(C), Fed. R. Crim. P., respectfully requests that this Honorable Court accept the plea agreement entered into by the parties, and impose a sentence of 180 months or fifteen years.

### *Background*

Zachariah Joe is a twenty-eight year old man who was born in Shiprock, New Mexico to Miranda Begay and Raymus Joe. To his family and friends, he has always been known as Zach. Zach was primarily raised by his mother, and they remain extremely close. His childhood was marked by chaos. Zach's father is an alcoholic,

1

who was prone to violence when he was intoxicated.  His father was physically abusive to Zach's mother, and eventually to Zach as well.

Both Zach and his mother were victims of his father's alcoholism.  His father was unpredictable and impulsive.  As a child, Zach remembers constantly being in fear of what his father might do.  The abuse began when he was eight years old, and continued until he was eighteen.  His father would hit him, and push him into walls. He was also verbally abusive, and he would punch holes into walls and destroy the house. Zach lived in fear of inadvertently setting him off.  When Zach's mother was pregnant with his younger sister, it seemed like things improved, and his father stopped hitting his mother.  Unfortunately it was only a partial improvement, since he continued to take his anger out on Zach.

Zach's mother has always emphasized the importance of education.  Although Zach was an average student, he successfully graduated from the Data Arts and Technology Academy in 2010.  He even attended one semester of college.  Although he never finished college, Zach has consistently been employed.  He has most recently worked at Burger King, as well as part-time at AV Water Company in Farmington.

Zach began drinking alcohol at age thirteen, and it has been his drug of choice ever since.  His drinking soon became a problem.  Zach realized that he often became angry when he drank.  He transformed into a person he did not recognize or like.

Zach understands that when he drinks alcohol, his personality changes, and he sometimes does things that he would not do otherwise.  As an adult, he has been arrested for crimes involving alcohol.  His alcohol abuse has even destroyed relationships with potential partners.  Although his family is understandably saddened and confused by his actions, they remain supportive of Zach.

### Argument

The abiding principle throughout the judicial history of our country is that the sentencing judge should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify the crime and punishment." *Koon v. United States,* 518 U.S. 81, 113 (1996). Therefore, every sentence in a criminal case must be both just and reasonable based on a fair interpretation of the United States Sentencing Guidelines and a full assessment of the statutory factors delineated in 18 U.S.C. § 3553(a).  *United States v. Kristl,* 437 F.3d 1050, 1053 (10th Cir. 2006), see also *United States v. Contreras-Martinez,* 409 F.3d 1236, 1241 (10th Cir. 2005).  Ultimately the sentence in every criminal case must be "sufficient, but not greater than necessary" to fulfill the sentencing aims established by Congress.  *United States v. Mateo,* 471 F.3d 1162, 1163 (10th Cir. 2006).

## I.      18 U.S.C. §3553 (A) FACTORS

This Court is required to consider the factors listed under Title 18 U.S.C. §3553(a) when deciding what the appropriate sentence should be.  *United States v. Booker*, 543 U.S. 220, 260-262 (2005).  If the factors listed in §3553(a) support a sentence outside the guidelines, the sentencing court is now free, under *Booker*, to impose that sentence outside the guidelines.   Under §3553(a), this Court must consider:

1. The nature and circumstances of the offense and the **history and characteristics of the defendant**;

2. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and provide just punishment and deterrence, to protect the public from further crimes of the defendant and to provide the defendant with education, training, medical care or other correctional treatment;

3. The kinds of sentences available;

4. The need to avoid unwarranted sentence disparities among defendants with similar records who are guilty of similar conduct;

5. The need for restitution. (Emphasis added)

## A. NATURE AND CIRCUMSTANCES OF THE OFFENSE AND HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Zachariah Joe is a twenty-eight year old man whose life has been ruined by alcohol abuse. He grew up with an alcoholic father who became angry and often violent when he drank. Zach endured abuse at his father's hands for ten years of his life. As a young teenager, Zach began drinking alcohol and he slowly transformed into an alcoholic just like his father.

On the night of January 3, 2019, Zachariah Joe did a horrible thing. Something that he can never take back, no matter how much he wishes he could. Zach took the life of his cousin. Someone he had known all of his life, and loved. He never set out to take his life, and still is not quite sure how the events of that night culminated in such brutal actions. He regrets what he did every day. He is sorry for the pain he has caused his family. Zach has taken this period of incarceration to reflect, and to look ahead.

There can be "no limitation . . . placed on the information concerning the background, character and conduct of a person convicted of an offense which a court . . . may receive and consider for the purposes of imposing an appropriate sentence." 18 U.S.C. § 3661. Thus, information about the adverse childhood experiences of the defendant and his predisposition to the disease of alcoholism is an appropriate subject for the Court's consideration prior to the imposition of any criminal sentence.

Mr. Joe respectfully submits that this offense, like every other criminal offense he committed in the past, is the product of the disease of alcoholism, which in turn may be the product of his traumatic childhood experiences and his family history of alcoholism.  Mr. Joe contends that his childhood experiences and his family history of alcoholism made him more pre-disposed to the disease of addiction.  He offers this not as an excuse, but as an explanation for his behavior. Thus, Mr. Joe requests that this Honorable Court address his need for alcohol treatment and fashion a just and reasonable sentence that emphasizes recovery instead of a long and wasteful prison sentence.

Children born into families with a history of addiction or abuse are at increased risk for substance use disorders later in life.  For example, children of alcoholics are about four times more likely than the general population to develop alcohol problems and are at higher risk for many other behavior and emotional problems.  This is a major problem in the United States because about 12 percent of American children, more than 8 million kids, live with a parent who abuses alcohol or drugs.  "A Family History of Alcoholism," National Institute on Alcohol Abuse and Alcoholism, June 2012.

The National Institute of Alcohol Abuse and Alcoholism defines an alcohol use disorder as a diagnosable medical condition in which an individual's alcohol consumption causes harm or distress.  www.niaa.nih.gov/alcohol_health.  Alcohol changes brain chemistry, initially increasing neurotransmitters that drive the brain's pleasure centers, but over time and with chronic abuse, depleting those same neurotransmitters.  As the tolerance to alcohol increases, the abuser must take in more alcohol in order to feel the effects, which further damages both the body and the brain.  www.dualdiagnosis.org/alcohol-addiction/long-term.

Native Americans have some of the highest rates of alcohol and drug abuse among any identifiable group.  Substance Abuse and Mental Health Services Administration (2016)  www.samhsa.gov/specific-populations/racial-ethnic-mionority.  *Native Americans and Alaskan Natives are five times more likely than other ethnic groups in the United States to die of alcohol-related causes*.  National Institute on Alcohol Abuse and Alcoholism.  www.niaa.nih.gov /publications/ arh301/3-4.htm.   Many factors contribute to the development of alcohol use disorders among Native Americans.  Native Americans have high rates of unemployment and low rates of educational achievement and they are less likely to have access to quality rehabilitation programs.  All of these factors may contribute to greater use of alcohol.  www.recocvery.org/topics/native-americans-alcoholism/.

Finally, many scientific studies have also shown that genetic factors influence alcoholism and establish that children of alcoholics are about four times more likely than the general population to develop alcohol problems. *National Institute on Alcohol Abuse and Alcoholism, Family History.* Alcohol is metabolized by several pathways, the most common of which involve two key enzymes – alcohol dehydrogenase (ADH) and aldehyde dehydrogenase (ALHD). Genetic differences in these enzymes may also help to explain why some groups of people have higher or lower rates of alcohol-related problems and suggest that some groups of Native people may be predisposed to alcoholism because of differences in the way they metabolize alcohol. NIAAA publications, *supra.*

## B. KINDS OF SENTENCES AVAILABLE, DETERRENCE, AND TREATMENT

The parties have agreed to a below-guidelines sentence. In doing so, the parties took into consideration the possibility of conviction at trial for the lesser-included offense of voluntary manslaughter. The circumstances of this offense are such that both parties agreed such a result was possible. Such a conviction would have led to a drastically reduced guideline range. The agreed upon sentence takes into account the seriousness of the offense, but also allows Mr. Joe the possibility to reform and go on to live a productive life. It also takes into account the delicate family dynamics

at play.  Mr. Joe asks the Court accept the plea agreement and impose the agreed upon sentence.

The task before the Court at sentencing is to impose a sentence that is sufficient, but not greater than necessary to accomplish the goals of punishment. The established tradition of sentencing in federal courts is that "the punishment should fit the offender and not merely the crime." *Pepper v. U.S.*, 562 U.S. 476, 487-88 (2011), *internal citations omitted*. In light of the circumstances of this case, and the mitigating evidence presented herein, a sentence within the guideline range is simply "greater than necessary." An argument that the guidelines are unduly harsh is not new, nor groundbreaking. *See U.S. v. Bannister*, 786 F.Supp.2d 617, 623 (E.D.N.Y. 2011), (As "[o]ne of our most thoughtful jurists reminds us, '[o]ur resources are misspent, our punishments too severe, our sentences too long.' Justice Anthony M. Kennedy, Address at the American Bar Association Annual Meeting, San Francisco, Ca. (Aug. 9, 2003), *available at*

http://meetngs.abanet.org/webupload/commupload/CR209800/newsletterpubs/Justi ce_Kennedy_ABA_ Speech_Final.pdf."); *See also "The Failure of the Federal Sentencing Guidelines: A Structural Analysis,"* 105 Colum. L. Rev. 1315, 1328 (May 2005), ("At or near the root of virtually every serious criticism of the guidelines is the concern that they are too harsh, that federal law requires imposition of prison sentences too often and for terms that are too long. It is

notoriously difficult to determine how much punishment is enough, either in individual cases or across an entire population of offenders, but by any standard the severity and frequency of punishment imposed by the federal criminal process during the guidelines era is markedly greater than it had been before.")

Mr. Joe is 28 years old. Under the parties' agreement, he will be approximately 40 years old when he is released. He will have been sober for over a decade, a substantial period of time. He will have completed the 500-hour RDAP program, of which he is truly eager to take advantage. He will have gained invaluable insight into his disease, as well as tools to manage it. He will be reformed and ready to re-enter society, and live a productive life. While Mr. Joe's crime is exceptionally serious, a sentence within the guideline range of 235 to 293 months is nonetheless unduly harsh. Correctional treatment and rehabilitation are possible. Mr. Joe seeks to better himself through intensive alcohol treatment. One of the purposes of punishment is to provide needed correctional treatment in the most effective manner. This treatment and counseling while incarcerated, with close community supervision upon release can protect the public from future crimes.

Mr. Joe's personal history and characteristics also suggest a sentence of 180 months is appropriate. "[E]vidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to

emotional and mental problems, may be less culpable than defendants who have no such excuse." *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989), *internal quotation omitted*, (overruled on other grounds in *Atkins v. Virginia*, 536 U.S. 304 (2002)). Mr. Joe had a difficult childhood, marked by an alcoholic parent and physical abuse. It affected his childhood development, and likely his sense of stability and security, and ultimately his ability to function in the world.

WHEREFORE, in light of these circumstances, the Rule 11(c)(1)(C) agreed-upon sentence of 180 months, is sufficient, but not greater than necessary to accomplish the goals of sentencing. It will reflect the seriousness of the offense and provide just punishment; it will adequately deter future criminal conduct, protect the public from future crimes, and provide needed correctional and rehabilitative treatment.

Respectfully Submitted,
FEDERAL PUBLIC DEFENDER
111 Lomas Blvd NW, Suite 501
Albuquerque, New Mexico 87102
(505) 346-2489
Fax (505) 346-2494

*Electronically filed January 21, 2020*
/s/ Melissa A Morris
Assistant Federal Public Defender
melissa_morris@fd.org